IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| IN RE:   BROOKLAND PARK PLAZA, LLC,<br><br>Debtor. | Case No. 09-34495-KRH<br>Chapter 11 |
| WACHOVIA BANK, NATIONAL ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>BASHEVA DRESDNER and<br>YEHUDA GUTMAN,<br><br>Defendants. | Adv. Proc. No. 09-03164 |

# **MEMORANDUM OPINION**

Wachovia Bank, National Association ("Wachovia") brought this adversary proceeding against Basheva Dresdner and Yehuda Gutman (the "Defendants") to collect on a defaulted loan made by Wachovia to Brookland Park Plaza, LLC (the "Debtor"). The loan was guaranteed by the Defendants. Before the Court is a motion by Wachovia for summary judgment. There are no disputed facts relating to Wachovia's prima facie case. In response to the motion for summary judgment, the Defendants have raised the affirmative defense of equitable estoppel. The Defendants allege that Wachovia breached certain oral agreements that it made with them, which agreements induced the Defendants to sign the guaranty agreements. The question for the Court is whether Defendants' allegations, which for purposes of this motion for summary judgment must be accepted by the Court as true, create a genuine issue of material fact that would preclude

entry of summary judgment on Wachovia's prima facie case at this time. Wachovia contends that Defendants' allegations do not raise a genuine issue of material fact because any such oral representations or agreements are barred as a matter of law under both the statute of frauds and the parol evidence rule. The Court holds that the statute of frauds is inapplicable in this case, but given the application of the parol evidence rule, as discussed below, Wachovia is entitled to the entry of summary judgment against the Defendants.

## **Procedural Background and Jurisdiction**

Wachovia filed a complaint initiating this action on May 18, 2009 in the U.S. District Court for the Eastern District of Virginia (the "Complaint"). Wachovia invoked the District Court's diversity jurisdiction, as the Defendants were residents of the State of New York and Wachovia had its corporate headquarters in Charlotte, North Carolina, and the amount in controversy exceeded $75,000.00. On June 30, 2009, Defendants filed a motion in the District Court to dismiss the Complaint or, in the alternative, to transfer venue to the Eastern District of New York. By Memorandum Order entered July 22, 2009, the District Court denied both motions, finding that the Defendants had not met their burden of showing factors that strongly supported a transfer of venue to the Eastern District of New York. On August 5, 2009, Defendants filed a motion asking the District Court to transfer the action commenced by the Complaint to this Court on the grounds that the cause of action was related to the currently pending Chapter 11 case of the Debtor. Hearing was held on the motion to transfer on August 6, 2009. An order was entered granting the motion and the proceeding was referred to this Court on August 10, 2009.

As this is a suit by a creditor against guarantors of obligations where the primary obligor is a debtor in a Chapter 11 case pending before the Court, this proceeding is one that is "related

to" the Bankruptcy case. *See, e.g., In re Commonwealth Sprinkler Co., Inc.*, 296 B.R. 694, 697 (Bankr. E.D. Va 2001) (holding that the bankruptcy court has "related to" jurisdiction to hear a suit against a guarantor of obligations where the primary obligor is a debtor in a current bankruptcy proceeding). Accordingly, this Court has subject-matter jurisdiction over this adversary proceeding not only under 28 U.S.C. § 1332(a) but also pursuant to 28 U.S.C. §§ 157(a), and 1334. Neither Wachovia nor Defendants recite in their pleadings whether this is a core or non-core proceeding as required under Rule 7008 of the Federal Rules of Bankruptcy Procedure. The action appears to be a non-core proceeding as such proceedings are described in 28 U.S.C. § 157(b)(2). Section 157(c)(1) of title 28 provides that a bankruptcy judge may hear a proceeding that is not a core proceeding if it is related to a case under title 11. Furthermore, 28 U.S.C. § 157(c)(2) authorizes a bankruptcy court to enter final orders or judgments in such related cases where they are referred to the bankruptcy court by the district court and where "all the parties to the proceeding" have given their consent. 28 U.S.C. § 157(c)(2). While consent is not explicitly set forth in the Defendants' pleadings, the Defendants' consent to the entry of a final order in this proceeding by the Bankruptcy Court can be readily surmised from the Defendants' motion requesting the District Court to transfer the cause of action to this Court. Wachovia initially objected to the transfer of the proceeding to the Bankruptcy Court, but given that it has now filed this motion for summary judgment requesting "the [Bankruptcy] Court for an Order granting summary judgment in favor of Wachovia,"[1] Wachovia is deemed to have consented to the entry of a final order as well. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409(a) and the entry of the Memorandum Order of the District Court on July 22, 2009.

---

[1] *See* Plaintiff's Motion for Summary Judgment and Supporting Memorandum, filed on Aug. 26, 2009 [Docket No. 3].

3

**Undisputed Facts**

Brookland Park Plaza, LLC (the "Debtor") is a Virginia limited liability company that filed a voluntary Chapter 11 petition for relief in the United States Bankruptcy Court for the Eastern District of New York (the "New York Bankruptcy Court") on June 23, 2009 (the "Petition Date").  Venue of the Debtor's Chapter 11 case was transferred to this Court by the New York Bankruptcy Court by order entered July 10, 2009.  The Debtor remains in possession of its property and continues to operate its business pursuant to 11 U.S.C. §§ 1107 and 1108.

On October 31, 2006, Besheva Dresdner ("Dresdner"), as agent for the Debtor, executed a promissory note (the "Note") in exchange for Wachovia loaning the Debtor the total principal amount of $2,500,000.  Dresdner, the Manager of the Debtor, and Yehuda Gutman, a member of the Debtor, each executed agreements in favor of Wachovia guaranteeing the timely payment and performance of all liabilities and obligations of the Debtor to Wachovia (the "Guaranty Agreements"). Under the Guaranty Agreements, the Defendants promised to pay Wachovia all obligations owed by the Debtor to Wachovia, including the obligations owed by the Debtor under the Note.

Debtor is in default of its obligations under the Note, having not paid any of its creditors, including Wachovia, in the 90 days prior to the Petition Date.  By letter dated January 13, 2009, Wachovia made demand upon the Defendants for payment of all obligations due and owing under the Note and Guaranty Agreements.  As of August 26, 2009, the balance due pursuant to the Note and Guaranty Agreements was $2,639,007.83, which sum includes the unpaid principal balance of $2,432,749.93, accrued interest in the amount of $150,036.20, late fees in the amount of $6,000, attorneys' fees and expenses incurred through August 24, 2009 in the amount of

4

$43,946.70, and other costs in the amount of $6,275. Defendants have not made any payments to Wachovia.

## **Discussion**

### Legal Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986). In determining whether this showing has been made, the Court must assess the evidence in the light most favorable to the party opposing the motion. *See, e.g.*, *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979).

The United States Supreme Court has made clear that summary judgment is not a disfavored procedural shortcut, but rather an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. at 32. (quoting Fed. R. Civ. P. 1); s*ee also Thompson Everett, Inc. v. Nat'l Cable Adver., L.P.*, 57 F.3d 1317, 1322–23 (4th Cir. 1995); *Sibley v. Lutheran Hosp. of Md., Inc.,* 871 F.2d 479, 483 n.9 (4th Cir. 1989); *Schultz v. Wills (In re Wills),* 126 B.R. 489, 494 (Bankr. E.D. Va. 1991).

A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. at 322. Summary judgment is appropriate only where there are no "disputes over facts that might affect

5

the outcome of the suit;" disputes over mere peripheral or irrelevant facts are not sufficient. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party demonstrates that there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence to demonstrate that there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."); *Celotex Corp. v. Catrett,* 477 U.S. at 325; *see also RGI, Inc. v. Unified Indus., Inc.*, 963 F.2d 658 (4th Cir. 1992).

Wachovia asserts that summary judgment is appropriate in this case because there is no genuine dispute over any issue of material fact that might conceivably affect the outcome of this litigation. The Defendants object to this motion, arguing that there is a genuine issue for trial. The Defendants assert that Wachovia failed to comply with certain oral representations that Defendants claim Wachovia made to them that allegedly induced the Defendants to enter into the Guaranty Agreements. Defendants contend that Wachovia's breach of these alleged representations gives rise to an affirmative defense of equitable estoppel.

Given the undisputed facts on the record, Wachovia, as the moving party, has made out a successful prima facie case. "[T]o recover on a guaranty, the obligee must establish, among other things, the existence and ownership of the guaranty contract, the terms of the primary obligation and default on that obligation by the debtor, and nonpayment of the amount due from the guarantor under the terms of the guaranty contract." *McDonald v. Nat'l Enterprises, Inc.*,

6

262 Va. 184, 189, 547 S.E.2d 204, 207 (2001).[2] The Defendants admit in their answer to the Complaint that they executed the Guaranty Agreements in favor of Wachovia, that the Guaranty Agreements and the Note attached to the Complaint are genuine and set forth their obligations to Wachovia, and that the Debtor is in default on its obligations to Wachovia under the Note. Further, it is not disputed that Defendants have not paid the obligations due from the Debtor to Wachovia under the promissory Note despite Wachovia's demand for payment.

As Wachovia has shown that there is no genuine issue of material fact as to its case in chief, the burden falls on the Defendants to produce evidence to demonstrate that there is indeed a genuine issue for trial. The Defendants contend that they have three possible affirmative defenses: (1) estoppel, (2) waiver, and (3) ratification. However, Defendants' response to Wachovia's motion for summary judgment only addresses the defense of estoppel.[3] In their affidavits, the Defendants each contend that Wachovia orally represented that it would loan the Debtor an additional $250,000 and that it would partially release property secured by its deed of trust as units secured thereunder were sold as condominiums. As this is a summary judgment proceeding, the Court must view the evidence in the light most favorable to the Defendants. Accordingly, the Court must assume for purposes of this motion only that Wachovia, through its agent, did make the alleged oral representations to the Defendants. Defendants contend that the representations were a material inducement for their execution of the Guaranty Agreements. The Court must accept this fact as true as well. Wachovia argues that, even assuming these facts, it should still prevail as a matter of law because both the statute of frauds and the merger clauses

---

[2] The Guaranty Agreements contain a choice of law provision that provides that the Guaranty Agreements shall be governed by and construed under the laws of the state of Virginia without regard to that state's conflict of laws principles.

[3] As Defendants have not set forth specific facts in their affidavits or otherwise to support their mere allegations and denials based on their affirmative defenses of waiver and ratification, Defendants' reliance upon these defenses is misplaced. Fed. R. Civ. P. 56(e)(2); *Celotex Corp. v. Catrett,* 477 U.S. at 325; *see also RGI, Inc. v. Unified Indus., Inc.*, 963 F.2d 658 (4th Cir. 1992).

contained in the loan documents bar consideration of such evidence. The Court concludes that Wachovia is incorrect in its application of the statute of frauds but correct in its application of the merger doctrine.

Application of the Statute of frauds

Wachovia argues that the statute of frauds bars the Defendants' claim that, according to the affidavits of the Defendants, Wachovia orally promised to extend an additional loan of $250,000 to the Debtors and to execute partial releases of units under its deed of trust securing the Note. The Virginia Statute of Frauds provides that no action shall be brought "[u]pon any agreement or promise to lend money or extend credit in an aggregate amount of $25,000 or more," unless such promise is in writing and signed by the party to be charged. Va. Code 11-2(9) (2009). This subparagraph was added to the Virginia Statute of Frauds in 1990 to address a dramatic increase that had occurred in the prior decade concerning lender liability litigation involving claims and defenses relating to oral statements allegedly made by lenders. *See* John L. Culhane & Dean C. Gramlich, *Lender liability limitation amendments to state statutes of frauds*, 45 BUS LAW 1779, 1779-1781 (1990). Wachovia has satisfied the statute of frauds and can pursue the action set forth in its Complaint against the Defendants because it has written Guaranty Agreements signed by the Defendants. The Defendants, on the other hand, have no writing signed by Wachovia stating that Wachovia has agreed either to lend additional money to the Debtor or to execute partial releases as units secured under its deed of trust are sold as condominiums. Defendants would appear not to have satisfied the statute of frauds.

Wachovia argues that, as the oral representations allegedly attributable to Wachovia are not in writing, Virginia's statute of frauds would bar the representations from coming into evidence. Wachovia argues that the Defendants cannot establish its affirmative defense of

8

estoppel as a matter of law; and, therefore, the affirmative defense does not raise a genuine issue for trial. In support of this argument, Wachovia relies on a Michigan Court of Appeals case, which states that "it would make absolutely no sense to conclude that the Legislature enacted a new section of the statute of frauds specifically addressing oral agreements by financial institutions but, nevertheless, the Legislature still intended to allow promissory estoppel to exist as a cause of action for those same oral agreements." *See Crown Technology Park v. D&N Bank, FSB*, 242 Mich.App. 538, 550, 619 N.W.2d 66, 72 (2000), appeal denied, 463 Mich. 1014, 626 N.W.2d 413 (2001). Other jurisdictions have followed this logic. For example, the District Court in the Southern District of New York, in granting summary judgment, held that because the statute of frauds barred developers from enforcing an oral contract to loan the developers $9 million dollars, they were also barred from raising a promissory estoppel claim or any tort claims on the basis of those alleged oral representations. *See Mark Andrew of Palm Beaches, Ltd. v. GMAC Commer. Mortg. Corp*, 265 F.Supp.2d 366 (S.D.N.Y. 2003), affirmed by 96 Fed. Appx. 750 (2nd Cir. N.Y. 2004). These cases, however, all share one significant feature that distinguishes them from the case before the Court. They each address an action that was brought by a plaintiff in the first instance for estoppel. While the Court may agree that an action brought on an oral representation to enforce a claim of estoppel may well be barred by the statute of frauds, the plain meaning of the statute suggests that such is not the case for the assertion of an affirmative defense of estoppel.

The Virginia Statute of Frauds states that "[u]nless a promise . . . is in writing and signed by the party to be charged or his agent, no *action shall be brought* . . . 9. Upon any agreement or promise to lend money or extend credit in an aggregate amount of $25,000 or more." Va. Code. 11-2 (2009) (emphasis supplied). The statute is silent as to the assertion of affirmative defenses.

9

Following the dramatic increase in lender liability actions that arose in the 1980s, a Task Force on Lender Liability Limitation Amendments to State Statutes of Frauds was formed to come up with solutions to this influx of lender liability litigation. *See* John L. Culhane & Dean C. Gramlich, *Lender liability limitation amendments to state statutes of frauds*, 45 BUS. LAW. 1779 1779-1781 (1990). The Task Force drafted a model statute for states to follow in enacting their own statutes. *See id.* at 1792. The model statute directly addressed the issue of affirmative defenses, stating that "no person may maintain an action for legal or equitable relief or a defense based upon a failure to perform an alleged promise, undertaking, accepted offer, commitment or agreement: (a) to lend or borrow money . . . unless the party seeking to maintain the action or defense . . ." has received a signed writing memorializing that promise or agreement. *Id.* The Virginia legislature, in considering the proposed legislation, chose not to include the language regarding "a defense" in the version of the statute it enacted when it amended Virginia's Statute of Frauds by adding subparagraph 9 in 1990 to deal with the lender liability problem.[4]

The Court can only conclude that the Virginia General Assembly intended to distinguish between the right to raise an affirmative defense on the one hand and the right to commence an action to enforce an agreement on the other when it amended the Virginia Statute of Frauds. Courts from other jurisdictions have recognized this same distinction. *See Sees v. Bank One, Ind., N.A.*, 839 N.E.2d 154, 158-60 (Ind. 2005) (holding that a guarantor was not barred from asserting affirmative defenses against the creditor by Indiana's Lender Liability Act, which prohibits actions brought against creditors on credit agreements unless the agreement is in

---

[4] On the other hand, some states have included language relating to affirmative defenses. *See, e.g.,* KAN. STAT. ANN. § 16-118(a) (West, Westlaw through 2008 legislation) ("A debtor or a creditor may not maintain an action for legal or equitable relief or a defense, based in either case upon a failure to perform on an alleged agreement, unless the material terms and conditions of the agreement are in writing and signed by the creditor and the debtor."); NEB. REV. STAT. § 45-1, 113 (West, Westlaw through 2009 legislation) ("A debtor or a creditor may not maintain an action or assert a defense in an action based on a credit agreement unless the credit agreement is in writing, expresses consideration, sets forth the relevant terms and conditions of the credit agreement, and is signed by the creditor and by the debtor.").

writing, sets forth the material terms, and is signed by the creditor and debtor); *Maynard v. Cent. Nat'l Bank*, 640 So.2d 1212, 1213-14 (Fla. Ct. App. 1994) (holding that Florida's Statute of Frauds "prevents a debtor from bringing a claim based on an oral agreement but does not prevent a debtor from asserting affirmative defenses based on an oral credit agreement."); *Hibernia Nat'l Bank v. Contractor's Equip. & Supply, Inc.*, 804 So.2d 760, 762-63 (La Ct. App. 2001) (holding that Louisiana's credit agreement statute only precludes "a borrower's affirmative actions for damages based on oral side agreements," but does not preclude a borrower's affirmative defenses in an action initiated by a creditor). Accordingly, the Court concludes that affirmative defenses are not barred by Virginia's Statute of Frauds. For these reasons, the Court holds that the statute of frauds does not prevent the Defendants from asserting their affirmative defense of estoppel in this case.

Application of the Parol Evidence Rule

"In Virginia, no general rule seems to be better settled than that, in controversies between two parties to a contract, parol evidence of prior or contemporaneous oral negotiations or stipulations is inadmissible to vary, contradict, add to, or explain the terms of complete, unambiguous, unconditional, written instruments." *Walker v. Laberge Co., v. First Nat. Bank of Boston*, 206 Va. 683, 689, 146 S.E.2d 239 (1966) (*quoting Godwin v. Kerns,* 178 Va. 447, 451, 17 S.E.2d 410 (1941)).[5] The parol evidence rule is particularly applicable where the written agreement contains an integration or merger clause. A merger clause is a "provision in a contract to the effect that the written terms may not be varied by prior or oral agreements because all such agreements have been merged into the written agreement." *Frederick Business*

---

[5] The parol evidence rule generally precludes the use of extrinsic evidence to vary or contradict the terms of a written contract. It is not a rule of evidence but a rule of substantive law. It is not a rule of interpretation, but rather it defines the subject matter of interpretation. It renders inoperative prior written agreements as well as prior oral agreements. Restatement (Second) of Contracts § 213.

11

*Properties Co. v. Peoples Drug Stores, Inc.* 191 W. Va. 235, 240, 445 S.E.2d 176, 176 (1994) (*quoting Black's Law Dictionary* 989 (6th ed. 1990)).

Both of the Guaranty Agreements executed by the Defendants contain the following provision on page five:

> **Final Agreement.** This Agreement and the other Loan Documents represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

The Note executed by the Debtor contains the identical language. Given this unambiguous language clearly set forth by the parties in the loan documents coupled with Virginia's general rule governing the admissibility of parol evidence, it is apparent to the Court that the parties intended for the Guaranty Agreements to serve as "complete, unambiguous, unconditional, written instruments." Merger clauses, such as the one in this case, bar parties from introducing evidence of pre-contract discussions to vary the terms of the contract. *See, e.g., Spotsylvania County School Bd. v. Seaboard Sur. Co.*, 243 Va. 202, 213, 415 S.E.2d 120, 126 (1992).[6]

Undeterred, the Defendants, nevertheless, seek to enter evidence relating to "prior or contemporaneous oral negotiations or stipulations," in order to contradict the plain language set forth in the loan documents. Defendants claim that Wachovia failed to honor its prior or contemporaneous oral representations to make additional loans and to release portions of its collateral, which representations, under the Defendant's theory of estoppel, would prevent Wachovia from recovering under the Guaranty Agreements.[7] These alleged oral statements made during the course of negotiating the loan are the very type of evidence that the merger

---

[6] A binding integrated agreement discharges inconsistent prior agreements, and evidence of a prior agreement is irrelevant to the rights of the parties when offered to contradict or expand the terms of the written agreement. Restatement (Second) Contracts § 215.

[7] Although not briefed in their response to the motion for summary judgment, presumably the Defendants would also rely on these oral statements for their affirmative defenses of waiver and ratification to the extent that these affirmative defenses have not been waived. *See* n. 3 *infra.*

clause and the parol evidence rule are designed to keep out. Both Defendants and Wachovia are sophisticated parties. They certainly understood and appreciated the meaning and role of the merger clause they chose to include in the Guaranty Agreements. The Court finds that the parties to the Guaranty Agreements must have understood that any representations not included therein or in the other written loan documents were not intended to be part of the parties' agreement.

There are only two commonly recognized exceptions in which parol evidence will be admitted to vary the terms of a complete written agreement in Virginia. The first exception applies to cases involving fraud, and the second is the collateral contracts exception. *See J.E. Robert Co. v. J. Robert Co.*, 231 Va. 338, 343, 343 S.E.2d 350 (Va. 1986). The first exception has no application to this case as there has been no allegation of fraud made by the Defendants. The second, the collateral contracts exception, "allows admission of parol evidence 'of a prior or contemporaneous oral agreement that is independent of, collateral to, and not inconsistent with the written contract, and which would not ordinarily be expected to be embodied in the writing.'" *FWB Bank v. R.S.Q. Assocs.,* 31 Va Cir. 74, 76 (Va. Cir. Ct. 1993). A provision for the release of all or part of the property secured under a deed of trust and the provision for the loan of additional moneys under a promissory note are the very types of agreements that would "ordinarily be expected to be embodied in the writing." In fact, as discussed above, the Virginia Statute of Frauds requires such agreements to be in writing in order to be enforceable.

The Defendants argue that the collateral contracts exception applies because this is a case involving partial integration. Citing *Jim Carpenter Co. v. Potts*, 255 Va. 147 (1998), the Defendants point out that where written contracts are only partially integrated, parol evidence may be admissible to understand the full agreement. In *Jim Carpenter*, the deed of trust at issue

expressly provided for partial releases for individual lots. It was silent, however, as to the terms under which those releases would be given. *See Jim Carpenter,* 255 Va. at 833. The Virginia Supreme Court noted that the deed of trust contained a "provision that cannot be implemented absent additional terms or a collateral agreement," and therefore held "that the evidence supports the chancellor's finding that this deed of trust is an incomplete integration of the agreement between Jim Carpenter and Southface." *Id.*[8] In the case before the Court, there is no need to rely upon any unwritten collateral agreement in order to properly implement the Guaranty Agreements. Furthermore, there is nothing in the Guaranty Agreements or in any other of the loan documents that would suggest that Wachovia had intended to release portions of the property secured under its deed of trust or that Wachovia had agreed to make additional loans to the Debtor that would support a partial integration argument.

On the contrary, the plain language of the merger clause suggests just the opposite. The parties intended that these Guaranty Agreements and the loan documents were "complete, unambiguous, unconditional, written instruments," manifesting the full agreement between the parties. The parties explicitly agreed that there were no unwritten oral agreements between them such as those that the Defendants now seek to advance. The parties are bound by the four corners of the Guaranty Agreements. Parol evidence relating to Wachovia's alleged oral representations of additional agreements is inadmissible. The Defendants cannot rely upon any such alleged oral representations to support their affirmative defense of estoppel. As such, the allegations do not present a genuine issue of material fact. As the Defendants cannot establish an affirmative defense of estoppel based upon the oral representation they claim that Wachovia made to them, summary judgment in favor of Wachovia is appropriate.

---

[8] The Court also notes that the deed of trust at issue in *Jim Carpenter* did not include a merger clause stating that the deed of trust was the complete agreement between the parties.

14

**Conclusion**

It is undisputed that Wachovia has made out a prima facie case to enforce the Guaranty Agreements that were entered into with the Defendants. Although Virginia's Statute of Frauds is not applicable to the assertion of an affirmative defense, given the existence of the merger clause and application of the parol evidence rule, oral statements made by Wachovia that would change the nature of the contract between the parties are inadmissible. Therefore, allegations of such raise no genuine issue of material fact for trial and summary judgment will be granted in favor of Wachovia in the amount of $2,639,007.83.

A separate order shall issue.

ENTERED: _____

                                                    /s/ Kevin R. Huennekens
                                   UNITED STATES BANKRUPTCY JUDGE

Copies to:

**Peter Barrett**
Kutak Rock L.L.P.
1111 East Main Street, Suite 800
Richmond, VA  23219-3500

**Kevin J. Funk**
Cantor Arkema, P.C.
1111 East Main Street, 16th Floor
Post Office Box 561
Richmond, VA  23218-0561

**Robert B. Van Arsdale.**
Office of the U. S. Trustee
701 E. Broad St., Suite 4304
Richmond, VA  23219